Oyez, oyez, oyez. Honorable public, you are 50% on the webcast session. Please be seated. Morning, everyone. Just give us a minute to get organized, and we'll start at the back. First case on the docket this morning is 525-0085, City of Mattoon v. Tim Quakenbush. Mr. Byers, you ready? Yes, Your Honor. Okay, you may proceed when you get up to the podium and have your things in order. May it please the Court. Morning. Counsel. The plain fact is that Judge Bovard did not like the way Tim's property looked. Tim's property was not organized neat and orderly, and Tim's property did not pass Judge Bovard's view of the way it should look. Judge Bovard originally, and through the many compliance hearings, tried to force Tim to make his property have a better appearance and be more organized, neat and orderly. The nuisance ordinance, which is the foundation of why we are here today, does not contain a beauty requirement. Judge Bovard's concept of the way the property should look is not required by the ordinance. The original citation for the nuisance is Exhibit 3, which is located at E, Volume 2, pages 456 and 457. Exhibit 3 alleges extensive amount of junk, refuse, garbage, debris, and vessels holding stagnant water. Judge Bovard required the City to supplement the citation, which it did, by a letter from Police Chief Taylor dated December 10, 2018, which is Exhibit 4 and is located at E, Volume 2, page 462. It is expected that this supplement is the equivalent of a bill of particulars under 735 ILCS 5-2-607. The supplement, Exhibit 4, contains a long list of items for the north property and a long list of items for the south property, which is claimed to violate the nuisance ordinance. However, the items listed do not fit the definition of nuisance under the ordinance. For instance, Exhibit 4 lists metal items of all kinds, like steel tanks, refrigerators, wood items of all sorts, dumpsters, inoperable vehicles, masonry and brick, totes, and other items. However, the definition of a nuisance under Section 95.01, Subparagraph B, Number 12, excludes inoperable vehicles when they are located on private property, which is lawfully zoned C-4 and I. And that's what Tim's property is. It's zoned C-4 and I. But the metal that you described is not part of a vehicle. If you set aside the vehicle and you put all the other metal into a category, if you will, you would agree that that's the kind of garbage in which flies, mosquitoes, disease-carrying insects, rodents, or other vermin may breed or be reasonably expected to breed if they're just allowed to sit and rust? Well, Your Honor, I'm glad that you asked this question because it brings up two other things that come under the definitions of what is and what is not an ordinance under 95.01. What is or not a nuisance? Yes. As opposed to, you said ordinance. Excuse me, which are not a nuisance. I misspoke. Okay. So by the very definition of what is and what is not a nuisance, it excludes these items that are on the property, which is C-4 and I. Now, the record is totally devoid of testimonies or exhibits depicting garbage because garbage is specifically defined in the nuisance ordinance under section 95.01 subparagraph B-3b as animal and vegetable waste resulting from the handling, preparation, cooking, or consumption of food. That's a very specific definition of what is and what is not garbage. And the city has no offer of any proof of that kind of animal waste or cooking things. And that's what the ordinance defines as garbage. So if we look at the definitions of what is and what is not a nuisance violation, most, if not everything, that's on Tim's property doesn't fit within the definition of nuisance by the very ordinance under which he was prosecuted. If it's not a nuisance, why subject your client or why would your client then agree to a cleanup schedule or an abatement schedule? Yeah, my client has worked with the city of Mattoon for many, many, many years. He's cleaned up after their fires. He's cleaned up after the tornadoes. He's cleaned up after a lot of things. He has a working relationship with the city. He does not want the city to think ill of him, and that's why he has always tried to work with the city, not just in this instance, but in other instances as well that are not part of this case. So there is a subjective reason why he wants to help the city and do what he can. Can you address this issue that you raised about the continuing violation and the accruing of the fines? Can you specifically address that issue? Yes, Your Honor. It has been my position as counsel for Mr. Quackenbush that the ordinance does not provide for a continuing violation in this section. Now, there are other sections that maybe do have continuing violations, but in this particular section, 95, it does not. It has a fine of $750 for one day, and then it says each day is a new offense, which in our view requires a new process, the administrative procedure, and then a new summons or new citation to be served. And Judge Goldwater just completely ignored that and entered a, I think legislated, a continuing violation section because it's not there. It's not in the code for that section. What about the section of 10.99 that they cite? That's sort of a catch-all. It is. It's a catch-all, but it specifically excludes anything for which there is already a penalty. And in the 95.06b, there is a specific penalty for this. So the catch-all, if you read the language of the catch-all section, it specifically excludes anything that already has a penalty for it. And then if you also look at the 95, you'll see that the section that counsel has cited in his brief only applies to two of the parts of the ordinance and does not apply to the penalty part. And I put that forth in my reply brief so that the court can specifically look at my responses to how those two things don't fit together. But getting back, the record is totally devoid of any testimony exhibits depicting standing water. The properties are all rocked, except for a few areas which have a concrete floor. Water, whether it's by rain or melting snow or whatever, seeps into the ground and leaves Tim's property. Tim's property is not low-lying. It's elevated above the rest of the surrounding areas, except for in the portions where it's level, where they can drive in and out from the road. So there's no water that accumulates on his property. Let me stop here for one second. Just clarify for me. I don't know that there was a picture depicting it, but wasn't there testimony from officers and possibly, I don't recall in the record where I read this, but wasn't there testimony with regard to there being standing water in some of the totes, in some of the items that were on the property that had a concave nature to them with old water? Well, why did you ask that question? Officer Taylor opined at one point in time that he thought that there could be standing water. But there was no testimony that said, I saw standing water or we saw standing water. There's no testimony or picture of standing water. But you are correct. Officer Taylor did opine that he believed that there could be standing water. I recall there was something in the record regarding that. Yes, that was his opinion. Of course, he's a layperson, but that's his opinion. The reason I asked you about the metal was because in the final judgment of January 7th, 2025, in paragraph four, the court found that your client agreed to a plan of compliance for June 20, 2024 to remove the inoperable cars that was on some kind of wooden device of some kind. But he also wanted to remove inoperable cars and establish a plan for removal of the rusted, damaged metal drums and containers. So if this wasn't a nuisance, why would he enter into a plan of compliance and be working with the court as if to acknowledge that he had this going on? Well, Your Honor, I'm glad you asked that question, too, because that comes down to some of the heart of the issue. My client vehemently disputes that he was guilty of a violation of the nuisance ordinance. But, however, he has always wanted to comply with whatever court orders are out there. And one of the orders that the courts gave to us was to submit a plan to clean this property. And so we obeyed that court order and submitted a plan to clean the property. That's because we're obeying a court order, not because we don't believe that we were innocent of the ordinance violation. There is no question that we have always taken the position that we are innocent of the ordinance violation. But there's also no question that we will comply with any court order, whether it comes from Judge Bovard or this court or whatever court there is. My client is going to comply with every court order that is offered to us. So in conjunction with what Justice Scholar just asked you, it's your position, I assume, that this compliance with every court order was all being generated out of the very first citation, and there would not have been multiple citations every day as though you were charged the fines with and things like that. Everything, in other words, came out of that first citation. It all did, Your Honor. Yes, there was only one citation that was ever served upon my client. And everything spins off of that first citation. We believe that that citation was improperly found against my client because of the issues that I'm presenting to this court. But once that occurred, once that order was entered, that bench trial order was entered, my client is going to comply with every court order that's issued. And so when the judge orders us to offer a plan of compliance, we're not going to say no, Judge, we're not doing that. We're going to go ahead and comply with the court and do what the judge asked us to do, just as we're going to do what you said. Well, my question then becomes, why do you drag this out so long? Why not just ask for a final order and appeal the citation? Your Honor, I like that question, too. But at some point in time, that's essentially what we did do, okay? But Mr. Quackenbush has had a longstanding relationship with this city. Mr. Quackenbush is not going to turn around and say, hey, you guys, I don't care what you think. You know, he's going to try to get his relationship with the city. They provide him with business. I mean, they hire him to tear down and fire damaged buildings. They hire him to do things. You know, you're not going to cut your nose off to spite your own face. He's going to do what he needs to do to maintain his position, and I'm sorry. If I may interject there, along the same vein, the issue on the motion for additional fines and that, that the judge entered that said it was impractical for the city to issue additional citations, why not file a motion to dismiss to that? I mean, even if you're trying to comply, why not file something? Because, I mean, the other side is raising that you've waived that issue. Your Honor, we did file a memorandum that said that you judge you can't do that. It's in our memorandum because he asked for authority on whether he could or could not do that. That was prior to trial, correct? No. That memorandum? No. It was in Article 23, I think? Yeah, but it was on whether or not he had the authority. The original trial was before I got involved. It was with Attorney Reardon. And then, so when I got involved, the original ordinance violation had already been issued. May I finish the answer? Yes, please do. Okay. So at that point in time, the city did file its motion. And then Judge Bovard asked for authority, a memorandum, of whether or not he had the ability to do that. And we filed our memorandum saying, no, you don't have the ability to do that. I suppose that's equivalent to a motion to dismiss when we tell the judge you don't have the authority to do that. And then he ruled against us and went ahead and did it anyway. Okay. Thank you. Any other questions? Okay. I'm sorry my time is up. Thank you. Mr. Fires, you will have a few minutes after opposing counsel makes his argument to finish up and have rebuttal. Oh, I will do. Thank you. Okay. So we'll hear from you again. Thank you. Mr. Jones? You may begin. Thank you. Your Honors, may it please the Court, I'm a counsel. My name is Daniel Jones, and I represent the city of Mattoon in this matter. And we are here today to ask the Court to affirm the very well-reasoned and well-thought-out opinions of Judge Bovard, that he has set down several orders in this case. And so, Your Honors, no one has ever been given more due process, more of a chance to make things right, more of a chance to bring things into compliance than Tim Quackenbush. And no one has ever taken advantage of a more well-meaning judge than Tim Quackenbush. The record's complete. It's huge, I know. And I won't trouble you with it, but the police chief from Mattoon began working with Mr. Quackenbush back in May of 2018. And in October, we finally had enough, and we filed a complaint for the violation of the nuisance. And things kept going on and going on, and the judge kept giving Mr. Quackenbush every chance to bring the property into compliance. He kept ordering him to work with Chief Taylor. He had Chief Taylor write out in detail what the problems with the property were and kept trying to work. So we didn't have trial on this for over a year. It was back in November 22 of 2019. We finally had trial in this matter. And the judge, again, issued an opinion in January of 20, setting forth a very well-reasoned, structured order, which put down what the problems with the property were. Mr. Jones, let me interrupt you. I'm interested in this motion that was filed, this motion for, I think it was called like additional citations. It was to extend the citations, I recall the title. Why file that motion if the ordinance would in fact allow it anyhow? Well, it was more of a notice to the other side. I'm going to ask for this at the next hearing if we don't get some compliance. And to answer your earlier question, it was after the original trial. It was in 21, and our original trial was in 19. And that is why I filed it. We wanted to, you know, it had been two years. And we wanted some motion, and I wanted the other side to know, hey, next hearing, I'm going to ask for additional penalties based on statute or based on the ordinance. Because the ordinance does require some additional citations for the additional days of the violation. Is that correct? I do not agree with that, Your Honor. Okay. So I think it is clear that you issue a citation, and there are penalty provisions throughout. And I disagree with counsel. Section 95 says we can use any other provision, work in consonance is the word, with any other provision in the code. And that includes. What section are you referring to? That's in section 95.02. It says you can use any other section of the code to impose a penalty? It says. It says the procedures and remedies set forth in sections 95.03 and 95.04 may be used in the alternative or in consonance with or in lieu of any other remedy or procedure set forth in the code for the removal of violations. There are no other coordinates. I don't disagree with that. But the problem I have is that the issuance of a citation would require the issuance of some kind of notice to him, additional notice to him in order to comply with due process if you're going to impose further penalties. It's the imposition of another penalty that causes me a little heartburn. We did give him due process. We notified him. This is what we're asking for.  Of one. Citation. Right. And then we asked for the additional penalties pursuant to section 10.99 of the code, which says that each day that a violation continues is a separate offense. And the court agreed with that. And the court considered that. And he said, I think it's, I think the words were impractical and unreasonable to ask the city to issue a citation and all of that. You're right. The judge says that. But I'm wondering why he concluded that. Why is it impractical if you've got him right there in front of you? The argument was we have to issue a citation each day. And for each day, then we have to give a notice for each day and that there has to be another notice in compliance. And that's what the judge ruled to be impractical. Why didn't the city go in and abate the property? Cost, Judge. Look at it. Cost? I would imagine that it costs quite a bit to have counsel and motions. I mean, the city's paying either way. I'll be honest. We didn't think this was going to be a seven-year process either. I mean, the idea behind this, and I think Judge Bovar was very clear, that the incentive here was to give Mr. Quackenbush incentive to clean the property and bring it into compliance and then dismiss the case. And that's what the attempt was. That was the attempt to work with Chief Taylor. That's why he got a year before trial plus that. He's gotten five chances. We've had five compliance hearings. And if you look through every time, you'll see what Judge Bovar is saying, that it's scrap. It's not real things that are associated with the business. And this whole idea that there was a business on the property is just a myth that has been generated. So I want to make sure that I'm clear in my mind. You are hinging the ability to do a continuing violation on 10.99, though. Is that correct? Correct. That and in conjunction with the motion that you filed. I go back to my original point, though. If 10.99 allows it, and I've read 10.99, if it allows it, then why file the motion? I was trying to put everybody on notice, including the court, that this is the relief I am going to be seeking at the next hearing. And I want the judge to consider it. I wanted Mr. Quackenbush and his counsel to know it and to consider it because I was going to pursue this matter. I had not asked for additional fines. We'd been two, three years into this thing, and I had not asked for additional fines yet. But we wanted to move the thing along. So it was a shadow process file? It was. The next one would come for you. Exactly. So your opposing counsel said several times that his client has a relationship with the city, was very much wanting to keep a good relationship, and that he, I believe what I heard was, complied with every court order. I'm looking at this. It wouldn't be $53,000 worth of fines for continuing problems if any compliance had been done, right? Okay. And that's correct, Your Honor. And I want to point out, first of all, Mr. Quackenbush hasn't had a relationship with the city in over 10 years. There is no relationship between Mr. Quackenbush and the city. That's an incorrect characterization. But, again, this idea that we've complied every single time, there are five, there's the original order, and then there's five compliance hearings and orders after every single one of those saying it's not in compliance. And they specifically say this property is not in compliance. And look at Judge Bovard's words. It's a scrapyard. It's a disorganized scrapyard. There's no rhyme or reason or organization that would set this up as a business. It's a scrapyard. And it continues to be that all the way through. Isn't it that way today? Isn't that what? Isn't it that way today? I'm sorry? Is it still that way today? It is. So my question remains, why is the city trying to collect fines as opposed to not abating the nuisance? We could go abate the nuisance. And the way the city code is written, after our 10 days, we could go in and do it without any further notice. And we could, and we have done that with other properties. But, again, you've seen the pictures. The record is complete with pictures. This property is three or four blocks long. It is just, the cost of cleaning it up is just more than the city could bear. And don't forget, there's the north side of Broadway Avenue, and then there's the south side property. And the south side has the same debris. It's got an old wear code gas station shell out there, which no one's ever explained how that's a legitimate business use of that. But, you know, the city just doesn't have the resources to go and clean this property. And then, yeah, we'd have a lien for the property. And we'd be foreclosing the property and get something out. But we don't have the resources out front to pay for that. And so this is the policy. So his, in his brief, points out that, I mean, I think he tries to make an argument for every item that's on the property, what its legitimate business use is. Now, the palace, he's burning for fuel. But all the other items, be it metal, rusted, or otherwise, can be sold for scrap. And, you know, playing the market with scrap, you're trying to wait until you can get the most money for the biggest bang for your buck. Why is that not legitimate business use? I mean, is there a specific business that is prohibited from being on that property? Or is there any business he'd like, including, hey, I'm going to sell this scrap for my other business by excavating or whatever. And then I'm going to come back and sell it when I have an opportunity. Right. And the judges rule that it's a C-4 property. And we have no problem with that. It's not an industrial property. So it can't do the things that an industrial property would. But the problem with that argument is one that Judge Bovard has pointed out, again, is that there's no business going on here. And if you look through the records, first of all, it's August of 2023, a hearing before we get any evidence, where Mr. Crackenbush claims, here's my evidence that I'm actually conducting a business. He's always said that, but the judge never believed it. And, again, our standard here is a manifest weight standard. So let me stop you on that. Yeah, I mean, a lot of businesses are business. They're poorly run. They're not profitable. So if he had a few sales during any period of time, maybe it's not a great business. Maybe he's not a good businessman in that regard. But is it not still a business? I disagree with that. I don't think it is a business, Judge. And I think if you look through the numbers, again, at the original hearing, Judge Bovard finds this is nothing more than a disorganized scrapyard. His words. And at the end, in March of 24, at the next to last compliance hearing, his written ruling says, this property for the last five years has remained a dumping ground for a variety of wood, metal, and a variety of scrap. The judge has never, ever once found this to be a business. And if you look at the evidence, Judge, there are, you know, you can go through and look at his claim proceeds in the record. But there are, you know, you go through. He has a demolition business? Or excavating? Allegedly, yes. Okay. He has the equipment for it. So he does some of that type of work. He does that, as far as we know. Mr. Jay, was it? Yes, ma'am. Oh, I'm sorry. And if he has that type of business, and part of that would involve removing items, cleaning up a job site that he's demolished a building on, or whatever the case might be, and he has to store some of that in certain places. Isn't that a continuation of that business on the property that he owns?  We've never seen any evidence of that, Judge, in six plus years. There's no evidence of anything presented about, I went to this business, and I destroyed that, and I got these items of property. We've never seen that in this record. You won't find it. So where does the WERCO filling station top come from? I don't know. It's been there. It's been there for a while. I've been city attorney since 2017. It's there when I got this. Okay. I don't know. And part of the problem is the city let this happen for a while. Right. And now we have a building, right? Mr. Jones, I'm going to interrupt you again. I keep going back to your, I know more about your ordinances now than I care to. I'm sure you do. But I've read a lot of your ordinances, and I'm looking at 10.99. Can you point me to which subsection of 10.99 you're relying on? It's subsection C. Okay. And you think that that's what gives the city the authority then to have a separate fine for each day? I do. Without a citation or notice? Because it doesn't say that. It doesn't say that. But we've given them notice. We believe that a separate offense is ongoing. This is an ongoing situation. But it doesn't list out the notice requirements or anything like that? It doesn't say that you have to file this motion? Because that, to me, implies then you go back to the citation section in how you address the due process and the notice. That's why I'm having a hard time reconciling the ordinances and the motion and the citation and this ongoing fine. That's where I'm stuck.  Okay. Well, the ordinance, as written, I'm stuck with that. But the ordinance at 95.02 says these ordinances can be acted on in consonance with the other ordinances. And that includes 10.99. And remember, 10.99 is within several sections. Section A is what counsel wants to call the general penalty provision, which the ordinance doesn't say what the fine is. Here's the fine. That's section A. This is subsection C. It's a different subsection. And it provides for separate offenses. And, again, we do believe that's what it says. Judge Bohlhardt agreed with us. That is the provision that allows us to go forward. Other questions I can answer here today? I want to get to the question. It seems to me that he was given a reasonable opportunity to correct the violations with all these plans that the judge gave him. And then despite him being given these reasonable expectations by the court, now what has happened is they've gone back and assessed a fine for every day that he was, quote, in violation. I believe that was his reasoning. So it seems to me that there's a negotiation going on here that now the city has kind of reneged on because now you want to impose a fine for the days that he agreed to comply but you don't think he did. That's, you know, it's like any other negotiation here. Well, we were not negotiating, but we did think he... Well, did somebody agree to a plan? Well, may I finish? Yes, you may. The city didn't agree to a plan. This was Judge Bovard's order. Yeah, Judge Bovard went way beyond what was required here, I think, of any of this. We had two on-site visits. I believe that he even went and looked at it himself. Yeah, a couple of times. And, by the way, it's Judge Bovard that mentions the standing water. It's in one of his... I thought I observed that. It wasn't just Chief Taylor. But, I'm sorry, I've lost the order. My question is, it seems that the offender was given the opportunity to comply. And yet, this idea that we've tried to comply, they haven't complied. You read the order. No, but there was an opportunity to comply, and what I'm worried about is, all of a sudden, you have at least what he believes is a good faith attempt to comply, and then you have the city coming in and saying, well, we're going all the way back to the beginning, and we want a fine assessed from the beginning on, despite the court's agreement to allow you to comply. I have a problem with that. And let's remember our chronology. First of all, there's a fine in the middle, too. There's a $5,000 fine for his failure to comply. So he's on, again, after my notice, I give him the motion, and I give them notice that we're going to try and do this, and the judge agreed that this fine is appropriate at this point. And, again, I will let you abate this nuisance, and I'll consider dismissing the fine. He gave them that opportunity as well. And, again, didn't do it, and finally the judge, you know, read the last order, you can see his frustration. I was naive. I thought that we could do this in a way that would give him a chance to abate the fine and not have city fines, but we're not there. And the judge had enough. So I don't think we agreed to negotiate anything. Well, regardless, the court did. The court allowed him the opportunity, and so I wonder how you go back and then all of a sudden say, well, I gave you this opportunity. You didn't follow my court order, so now I'm going back to the city's motion, and I'm going to apply a fine every day. That's really what happened here. Correct, but, again, that notice was given to him in 21. The judge didn't come to that conclusion until 24. I mean, again, three years of an attempt to get some compliance, and it didn't work, and I think the judge just had enough and said, this is what we're going to do. And so what – I'm wondering, although this is not before us, but if it's that way today, have you issued another citation? No, we're going to get through this one first, is our thinking. But that is on the horizon. We will start over once this – No evasion by the city. We'll consider it. It will depend on the city financial situation. You've seen the pictures. That's going to require a lot of money, even if we sell all the scrap metal. Even if you collect this fine. Even if we collect the fine, it's still going to be a lot of money, and I don't know that the city has the budget to do that. As I said, that's not before us. Unfortunately, this is not the only property in the city, too, and we've got to make decisions about where we do spend the money to clean and lean, as we call it. Right, I understand. Do you have any other questions? No questions. Thank you for your time. Thank you. I appreciate it. We appreciate it. Mr. Byers? Yes, I first want to address the issue about 1099. The code section that counsel read to you, section 95.02, and then he wrote paragraph B, and he says the procedures and remedies set forth in 95.03 and 95.04 may be used as alternative. So it's referencing just those two sections. Our fine section is in 96D, 95.06D. So it's this section that he referenced in 95.02 is not applicable to the fine section, which is 95.06D. And then if you look at the start of section 1099, it starts out in subparagraph A. Unless another penalty is specifically provided by this code for a violation of any particular ordinance, provision, section, or chapter, then it goes on. So this 1099 only takes place if there's no specific violation provided. But 95.06D provides a specific violation. It's $750 a day. So the sections themselves, when you read them together, specifically exclude what the city is trying to do. And that's the first thing I wanted to point out. The second thing I wanted to point out is that there is, if you look at the definitions of what is and what is not an ordinance violation, and that's all in 95.01, you will see that most of the things that the city has claimed are specifically excluded as not being part of an ordinance or of a public nuisance. And that has never been addressed by the city yet. But, for instance, let me give you an example. Unwanted vegetation. Unwanted vegetation is only a violation of the ordinance if it's not flowers, ornamental, or food plants. And there's been no evidence in the record that vegetation on Mr. Quackenglish's property is not any of that. It's a burden to the city to prove it. But more importantly, going on, assuming that all the vegetation on his property is not something like that, or ornamental flowers and that kind of thing. It also says it's only a violation if it's more than eight inches and unmaintained. Maintained is not defined in the stat, in the ordinance. But the testimony is... Let me get a common understanding. The testimony is... Specifically. Yeah. The testimony is that Mr. Quackenglish sprays his ground four times a year with ground killer, like Roundup. He does that during the growing season. He sprays it four times a year to kill all this stuff. So is that not maintaining it? I mean... Didn't the judge, in one of his visits, describe it as having like four or five foot tall vegetation on the property? Yes, during the rainy season that we had. Well, I spray Roundup. You did spray Roundup, but we got to five feet in the rainy season. Well, I can tell you that Mr. Quackenglish also had his knee replaced. But at some point in time, as he testified, he routinely does it four times a year. Is that not maintaining it? If there's four or five foot vegetation on the property at any point during the year, it wasn't maintained for a long period to allow it to go to that height. We can agree to that. We can agree that if you spray stuff with Roundup, it shouldn't get to be five foot tall. I would agree with that, Your Honor. But... Because I spray Roundup too. I don't know if that's cancer causing or not, but I do it. Different litigation. You can't have different litigation. But in any event, so it's... The question is, is it being maintained? Because... And there's never been any evidence other than Mr. Quackenglish's uncontroverted evidence that he does spray it with Roundup four times a year. Now, obviously when he had his knee replaced, he probably didn't get out there as quickly as he sure could have. But... And that's in the record because we had to get some of the... I believe his medical issue is in the record because we had to get some continuances based on the fact that he had his knee replaced. And ended up in the hospital even after that. So... But... It's uncontroverted, but he sprays four times a year. And what is the definition of maintained? It's not in the ordinances. Okay? And I see my time is up. Do you have any questions? I have a question because we haven't touched on this. And it's something that you requested in your prayer for relief. You indicate that you don't think that there was jurisdiction for the court to enter the fine above 750 because of this continuing fine and failure to issue individual citations for each day that the court imposed the fine. You're saying there was a lack of subject matter jurisdiction, not personal jurisdiction. Am I understanding that correctly? Yes, Your Honor. And to the extent that each citation has to be served, that would be personal jurisdiction as well. Okay. So, yes, we did assert that. And I do believe that is a valid point that this court... One of the things that I'd like to say to this court is that this area of the law is way underreported with opinions. It's hard to find things. And whatever you guys do, I really hope you don't issue it as a Rule 23 because this area of the law needs guidance. There's just hard to find case law. You would agree that it's costly to bring a case to the appellate court. And so this usually involves $500 fines or things of that nature. And so that may explain why there isn't a lot of law on this. I think that's exactly right. It's not a suggestion to hurt, though. I guarantee you that. I think that's exactly right. Paying a $750 fine versus the cost of an appeal, only when the $750 fine becomes $53,750 kind of magically, that's when the cost of an appeal can be justified. Would you also believe that as a part of this appeal, this court should make a determination as to whether the trial judge correctly found it was a nuisance?  So in addition to the fine issue, you've asked for a determination and review of the factual findings made by the court. That's correct, Your Honor, because if you look at the definition in 95.01 of all the different things that it says is a nuisance and the things that it excludes from being a nuisance, the stuff that Tim has is excluded. And there's two counsels that said it looks like a scrapyard. It's zoned for a scrapyard. There's nothing wrong with having a scrapyard on this property. Both the C-4 and the I are zoned for a scrapyard. Now, that's not what Tim thinks it is. He thinks it's his inventory. But if this court thinks it's a scrapyard, it's perfectly zoned to be a scrapyard. And everything in it, everything on it, is something that the nuisance ordinance specifically says is not a nuisance. It defines these things as not a nuisance when they're on C-4 and I, and that's what his property is. So thank you very much. One second. Oh. Any other questions? Okay. Thank you. Okay. Thank you both for your arguments here today. As Mr. Bynum indicated, this is a very interesting case. I think Mr. Quackenbush is here in the court with us today. Welcome. I should have said that earlier. This matter will be taken under advisement, and we will issue an order in due course. Okay. Thank you.